UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
In re
     Elio Bruno                                                       Case No. 02-12988 K
                              Debtor
-----------------------------------------------------------------
Elio Bruno
                              Plaintiff
            -vs-                                    AP No. 05-1255 K

First USA Bank, N.A.
                              Defendant
-----------------------------------------------------------------
In re
     Gail M. Banas
     Michael W. Banas                            Case No. 03-14821 K
                              Debtor
-----------------------------------------------------------------
Michael W. Banas and Gail M. Banas
                              Plaintiffs
            -vs-                                    AP No. 06-1001 K

Peoples National Bank
JP Morgan Chase Bank
                              Defendants
-----------------------------------------------------------------


## OPINION AND ORDER


Kenneth R. Hiller
2001 Niagara Falls Blvd.
Amherst, NY   14228

Attorney for Plaintiffs

Jacqueline M. Della Chiesa, Esq.
Simmons, Jonnace & Stagg, LLP
75 Jackson Avenue
Syossete, NY   11791

Attorney for JP Morgan Chase

Francesco Fabiano, Esq.
Fabiano & Associates, P.C.
1035 Seventh North Street
Syracuse, NY   13088

Attorney for Bank of America, N.A.


   These two Adversary Proceedings, involving different Debtors, have been consolidated for hearing and decision because they present identical issues and the same Defendant.  The Defendant has moved to dismiss and the Debtors have opposed.

   Although the facts are not exactly "stipulated," it appears from the submissions that there is no material dispute.

   For ease of expression, the Court will speak hereinafter as if there were only one Debtor and only one bankruptcy petition, that being Mr. Bruno's case.

   Prior to the filing of the Petition, the Defendant, Chase, had made a report, in the ordinary course of business, to a credit reporting agency.  The report was that the Debtor's credit card account was past due, had been charged-off, and had a remaining balance left owing and unsatisfied. Then came the filing of the Chapter 7 case, and, in ordinary course, the Debtor was discharged.  At no time after the filing of the Petition did Chase communicate with the Debtor or the Debtor's attorney or make any affirmative attempt to collect the debt.  Neither did Chase further report to the credit reporting agency.

   Rather, sometime later, the Debtor learned that his credit report did not show that the debt had been discharged in bankruptcy.  The Debtor believes (and wishes to prove at trial) that either he has been denied credit that he would have obtained had the credit report shown that

the debt to Chase had been discharged in bankruptcy, or that he has paid higher rates for the credit that he has obtained since his "fresh start" than he would have been charged had the fact of the bankruptcy discharge been disclosed on his credit report.

Because credit reporting agencies are not "parties in interest" who would receive notice of any particular bankruptcy filing, and because they apparently do not independently gather bankruptcy discharge information to "update" individuals' credit reports, the Debtor asserts that it was Chase's responsibility to report to the credit reporting agency that the information contained in the report was no longer accurate; that in fact there was no money remaining to be paid because it had been discharged in bankruptcy.

The Debtor thus argues that Chase, having left this information on the credit report, has violated the discharge injunction contained in 11 U.S.C. § 524 and the Order of Discharge and seeks damages, etc.

The Debtor cites a number of cases decided under the Fair Debt Collection Practices Act and the Fair Credit Reporting Act to the effect that providing an adverse report to a credit reporting agency may constitute an effort to "collect the debt" even in the absence of any direct communication with the defaulting borrower, actually seeking payment. Those cases are premised on the fact that the adverse credit report provides a powerful incentive for the borrower to pay even a disputed debt, in order that the borrower not find herself or himself thwarted in an effort even to have an apartment rental application approved.

For its part, Chase correctly points out that none of those cases arose under 11 U.S.C. § 524.

If the facts were different in the present case - - if the report to the credit reporting agency had occurred after the Debtor's discharge - - then the present case would squarely present the question of whether 11 U.S.C. § 524 should be interpreted in the same way that courts have interpreted those other Acts. But it is this Court's view that the fact that the adverse credit report, which was true and accurate when it was made, occurred prior to the bankruptcy filing, renders the cases under those other Acts inapplicable.[1]

Consequently, this seems to be a case of first impression, asking whether 11 U.S.C. § 524, standing alone, compels a lender to take the affirmative step of notifying its credit reporting agency or agencies that the defalcation that was previously reported has been discharged in bankruptcy.

## HOLDING

The Court rules that no such affirmative step is compelled by 11 U.S.C. § 524. Rather, if a debtor who has been discharged in bankruptcy wishes to avoid what the debtor

---

[1] In an interesting aside, such a change in facts would also present the question of whether a prior decision of the United States District Court for this District under the Fair Debt Collection Practices Act and favoring the Debtor, compels the present Court, as a matter of hierarchical *stare decisis*, to rule in the Debtor's favor. This writer has addressed the *stare decisis* issue often in published decisions and is firmly of the view that each bankruptcy judge in a district served by more than one U.S. District Court Judge is bound by *stare decisis* to obey the decision of any one of those District Court Judges in a like case until a different U.S. District Court Judge of the same district disagrees with his or her peer's earlier decision, in which event each Bankruptcy Judge is free to go either way. See *Irr Supply Centers, Inc. v. Phipps*, 217 B.R. 427 (Bankr. W.D.N.Y. 1998) *aff'd on other grounds,* 98 CV 0294C, (W.D.N.Y. Jul 19, 1999), Curtin J.; *Arway v. Mt. St. Mary's Hosp.,* 98-1049, (Bankr. W.D.N.Y. 1998); *In re Reid*, 237 B.R. 577 (Bankr. W.D.N.Y. 1999) and the following articles: Evan H. Caminker, *Why Must Inferior Courts Obey Superior Court Precedents?*, 46 Stanford L.Rev. 817 (1994), Michael C. Dorf, *Prediction and the Rule of Law*, 42 U.C.L.A. Rev. 651, 682-83 (1996), Paul Steven Singerman & Paul A. Avron, *Of Precedents and Bankruptcy Court Independence: Is a Bankruptcy Court Bound by a Decision of a Single District Court Judge in a Multi-Judge District?*, 22 Am. Bankr. Inst. J. 1, (2003), H. Michael Muniz, *Anarchy or Anglo-American Jurisprudence? The Doctrinal Effect of Stare Decisis upon Bankruptcy Courts in the Face of District Court Precedents*, 76 Fla. B.J. 34 (2002).

asserts has occurred in this case, then attorneys for bankruptcy debtors should be advising their clients, after the issuance of the bankruptcy discharge, to obtain a copy of their credit report or reports and follow the established process under those other Acts for updating the record, if they wish to do so.

## ANALYSIS

The Court agrees with Chase that decades of jurisprudence on the subject of bankruptcy discharge places it beyond cavil that discharge does not extinguish the debt, but only the remedy, and that many debtors elect to voluntarily repay discharged debts for reasons unrelated to debt collection activity.

Most importantly, it can readily be seen that neither 11 U.S.C. § 524 nor the discharge orders that are routinely entered by this Court expressly compel any affirmative action of any sort by any creditor whose debt has been discharged. *Q.E.D.*

This result is by no means unique to the consequences of discharge. For example, many thousands of judgment liens are "voided" by orders of Bankruptcy Courts under 11 U.S.C. § 522(f) each year, and although many debtors' attorneys seek to include language in the 522(f) order that compels the judgment creditor to do something, such as to "take steps" to have the judgment lien marked "released" or "discharged" or "voided," this writer has routinely stricken such language from any § 522(f) order. Rather, this writer has only entered orders under § 522(f) that simply declare the judgment lien "void, subject to the provisions of 11 U.S.C. § 349," and "requesting" that the County Clerk mark the judgment rolls accordingly. (Here in the State

of New York, the County Clerks are officers of the State Court, and this writer would never presume to "order" some other court's clerk to do anything in a matter to which they were never properly a party.)

There are many other orders entered by bankruptcy courts that expressly or by virtue of statute "void" this, or "deem" that, or "declare" some other thing. But almost never do we command involuntary participants in bankruptcy proceedings to take affirmative steps to implement our decisions, in cases in which they have done nothing on a post-petition basis to violate the Code.[2]

Indeed, in Chapter 11 cases particularly, bankruptcy courts do things that alter even the "public record" (such as U.C.C. recordings), and expressly state, in our orders, that our orders prevail "despite" the public record and without the need to alter the public record. Bankruptcy Courts do such things, typically, only when they know that the bankruptcy filing is itself a "public record" that requires those who deal with a debtor to be aware of the bankruptcy docket. Those are typically business cases, in which post-petition creditors either perform "due diligence," or are on "publication notice" or are on inquiry notice because the U.S. Trustee requires (properly) that a D-I-P checking account be labeled "Debtor-in-Possession" on the checks.

Post-petition actions, of course, are an entirely different matter, not presented in this case.

---

[2] One exception is a direction by this Court to a levying creditor to inform the County Sheriff or U.S. Marshal to stop a levy and execution that began pre-petition and was still in-process when the petition was filed. Such a direction simply implements 11 U.S.C. § 362 which, by its terms, stops a collection effort in its tracks.

CONCLUSION

Chase's failure to notify a credit reporting agency that its pre-petition report of an account delinquency has ended in a bankruptcy discharge does not violate 11 U.S.C. § 524.

The motion to dismiss is granted. Any remedy for the Debtors rests in legislation, not in judicial rulings under the applicable statutes.

SO ORDERED.

Dated:      Buffalo, New York
            October 31, 2006

                                                            s/Michael J. Kaplan
                                                            _____
                                                            U.S.B.J.